**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ACADIA GENERAL HOSPITAL, INC<br>d/b/a OCHSNER ACADIA GENERAL HOSPITAL<br>920 Pinhook Road<br>Lafayette, LA 70503<br><br>ALLINA HEALTH SYSTEM<br>d/b/a ABBOTT NORTHWESTERN HOSPITAL<br>800 East 28th Street<br>Minneapolis, MN 55407<br><br>ALLINA HEALTH SYSTEM<br>d/b/a BUFFALO HOSPITAL<br>303 Catlin Street<br>Buffalo, MN 55313<br><br>ALLINA HEALTH SYSTEM<br>d/b/a CAMBRIDGE MEDICAL CENTER<br>701 Dellwood Street South<br>Cambridge, MN 55008<br><br>ALLINA HEALTH SYSTEM<br>d/b/a FARIBAULT MEDICAL CENTER<br>200 State Avenue<br>Faribault, MN 55021<br><br>ALLINA HEALTH SYSTEM<br>d/b/a MERCY HOSPITAL<br>4050 Coon Rapids Boulevard Northwest<br>Coon Rapids, MN 55433<br><br>ALLINA HEALTH SYSTEM<br>d/b/a OWATONNA HOSPITAL<br>2250 26th Street Northwest<br>Owatonna, MN 55060<br><br>ALLINA HEALTH SYSTEM<br>d/b/a REGINA HOSPITAL<br>1175 Nininger Road<br>Hastings, MN 55033<br><br>ALLINA HEALTH SYSTEM<br>d/b/a UNITED HOSPITAL<br>333 Smith Avenue North | Case No. <u>1:24-cv-936</u> |

St Paul, MN 55102                                              )
                                                              )
ARMSTRONG COUNTY MEMORIAL HOSPITAL                            )
One Nolte Drive                                              )
Kittanning, PA 16201                                         )
                                                              )
BRFHH MONROE, LLC                                            )
d/b/a OCHSNER LSU HEALTH MONROE                              )
1541 Kings Highway                                           )
Suite A1-23, Hospital Administration                         )
Shreveport, LA 71103                                         )
                                                              )
EAST BATON ROUGE MEDICAL CENTER, LLC                         )
d/b/a OCHSNER MEDICAL CENTER-BATON ROUGE                     )
1514 Jefferson Highway                                       )
Brent House, 5th Floor                                       )
New Orleans, LA 70121                                        )
                                                              )
FLORIDA HEALTH SCIENCES CENTER INC                           )
d/b/a TAMPA GENERAL HOSPITAL                                 )
1 Tampa General Circle                                       )
Tampa, Florida 33601                                         )
                                                              )
GEORGETOWN MEMORIAL HOSPITAL                                 )
d/b/a TIDELANDS GEORGETOWN MEMORIAL                          )
HOSPITAL                                                     )
PO Box 421718                                                )
Georgetown, SC 29442                                         )
                                                              )
HOSPITAL SERVICE DISTRICT NO. 1 OF THE                       )
PARISH OF ST. CHARLES, STATE OF LOUISIANA                    )
d/b/a ST. CHARLES PARISH HOSPITAL                            )
1057 Paul Maillard Road                                      )
Luling, LA 70070-4349                                        )
                                                              )
HOSPITAL SERVICE DISTRICT NO. 1 PARISH OF                    )
TERREBONNE, STATE OF LOUISIANA                               )
d/b/a TERREBONNE GENERAL HEALTH SYSTEM                       )
8166 Main Street                                             )
Houma, LA 70360                                              )
                                                              )
HOSPITAL SERVICE DISTRICT OF THE PARISH OF                   )
ST. BERNARD, STATE OF LOUISIANA                              )
d/b/a ST. BERNARD PARISH HOSPITAL                            )
8000 West Judge Perez Drive                                  )
Chalmette, LA 70043                                          )

LAFAYETTE GENERAL MEDICAL CENTER INC          )
d/b/a OCHSNER LAFAYETTE GENERAL MEDICAL       )
CENTER                                        )
920 Pinhook Road                              )
Lafayette, LA 70503                           )
                                              )
OCHSNER CLINIC FOUNDATION                     )
d/b/a OCHSNER MEDICAL CENTER                  )
1514 Jefferson Highway                        )
Brent House, 5th Floor                        )
New Orleans, LA 70121                         )
                                              )
OCHSNER MEDICAL CENTER-HANCOCK LLC            )
d/b/a OCHSNER MEDICAL CENTER-HANCOCK          )
1514 Jefferson Highway                        )
Brent House, 5th Floor                        )
New Orleans, LA 70121                         )
                                              )
OCHSNER MEDICAL CENTER-KENNER LLC             )
d/b/a OCHSNER MEDICAL CENTER-KENNER           )
1514 Jefferson Highway                        )
Brent House, 5th Floor                        )
New Orleans, LA 70121                         )
                                              )
OCHSNER MEDICAL CENTER-NORTHSHORE, LLC        )
d/b/a OCHSNER MEDICAL CENTER-NORTHSHORE       )
1514 Jefferson Highway                        )
Brent House, 5th Floor                        )
New Orleans, LA 70121                         )
                                              )
OCHSNER MORGAN CITY LLC                       )
d/b/a OCHSNER ST. MARY                        )
1514 Jefferson Highway                        )
Brent House, 5th Floor                        )
New Orleans, LA 70121                         )
                                              )
PHOEBE PUTNEY MEMORIAL HOSPITAL, INC.         )
417 West Third Avenue                         )
Albany, Georgia 31701                         )
                                              )
PHOEBE SUMTER MEDICAL CENTER, INC.            )
126 Highway 280 West                          )
Americus, Georgia 31709                       )
                                              )
SOUTHERN REGIONAL MEDICAL CORPORATION         )
d/b/a LEONARD J. CHABERT MEDICAL CENTER       )

8166 Main Street                                              )
Houma, LA 70360                                              )
                                                             )
ST FRANCIS REGIONAL MEDICAL CENTER                           )
1455 St Francis Avenue                                       )
Shakopee, MN 55379                                           )
                                                             )
UNIVERSITY HEALTH SHREVEPORT, LLC                            )
d/b/a OCHSNER LSU HEALTH SHREVEPORT                          )
1541 Kings Highway                                           )
Suite A1-23, Hospital Administration                         )
Shreveport, LA 71103                                         )
                                                             )
UNIVERSITY HOSPITAL & CLINICS, INC                           )
d/b/a OCHSNER UNIVERSITY HOSPITAL & CLINICS                  )
920 Pinhook Road                                             )
Lafayette, LA 70503                                          )
                                                             )
WACCAMAW COMMUNITY HOSPITAL                                  )
d/b/a TIDELANDS WACCAMAW COMMUNITY                           )
HOSPITAL                                                     )
PO Box 421718                                                )
Georgetown, SC 29442                                         )
                                                             )
                        *Plaintiffs*,                        )
                                                             )
             v.                                              )
                                                             )
XAVIER BECERRA, in his official capacity as                  )
Secretary of Health and Human Services,                      )
200 Independence Avenue, SW                                  )
Washington, DC 20201,                                        )
                                                             )
                        *Defendant*.                         )
_____             )

## **COMPLAINT**

**INTRODUCTION**

1.        The Medicare program reimburses hospitals for inpatient services through the inpatient prospective payment system ("IPPS").  The centerpiece of the IPPS is a base payment rate known as the "standardized amount."  The Secretary of the Department of Health and Human Services (the "Secretary") calculated the standardized amount in federal fiscal year ("FY") 1984 and, as required by the Medicare statute, has updated that same calculation for inflation and carried it forward for each succeeding FY for the past forty years.

2.        The Secretary has admitted that, when calculating the FY 1984 standardized amount, he included transfer cases in calculating the "costs per *discharge*" of inpatient services— the first step in the statutory formula for calculating the inaugural standardized amount.  42 U.S.C. § 1395ww(d)(2)(A) (emphasis added).  Because transfers are not discharges, this was an error that diluted the standardized amount for FY 1984 and each year since, resulting in underpayment to hospitals.  Despite ostensibly acknowledging his error, the Secretary has never adjusted the present-day standardized amounts to correct for it.

3.        The Plaintiff hospitals filed administrative appeals with the Provider Reimbursement Review Board ("PRRB" or "Board") challenging the Secretary's failure to adjust the standardized amounts that he announced for FYs 2019 through 2023 to correct for the errors he made in calculating the inaugural standardized amount.  The Board dismissed the Plaintiffs' appeals, finding that they are barred by a provision of the statute that precludes review of certain budget neutrality adjustments that the Secretary was required to apply to the standardized amount in FY 1984 and 1985.  According to the Board, those budget neutrality adjustments were "inexplicably intertwined" with the original calculation of the standardized amount itself.

4.      The Board erred in dismissing the Plaintiffs' appeals because, among other reasons described below, its decision was predicated on an excessively broad reading of the provision precluding review of the budget neutrality adjustments that the Secretary applied to the standardized amount in the first years of the IPPS.  An appropriately narrow reading of that provision shows that it does not bar the Plaintiffs' appeals.  And even if it did, it would not shield review of the Secretary's *ultra vires* calculation of the standardized amount.

5.      Based on the forgoing, the Plaintiffs respectfully ask that the Court, *inter alia*, set aside the Board's decision dismissing the Plaintiffs' appeals, declare that the FY 2019 through 2023 standardized amounts are lower than required by statute, and order the Secretary to recalculate the Plaintiffs' IPPS payments for those years to correct for his error in the calculation of the FY 1984 standardized amount.

## JURISDICTION AND VENUE

6.      This action arises under the Medicare Statute, title XVIII of the Social Security Act, 42 U.S.C § 1395 *et seq.* , and the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*

7.      Jurisdiction is proper under 42 U.S.C. §§ 1395oo(a)(1)(A)(ii), 42 U.S.C. §1395oo(f)(1), 28 U.S.C. §1331, and 28 U.S.C. § 1361.

8.      Venue is proper in this judicial district in accordance with § 1395oo(f)(1) and 28 U.S.C. § 1391(e).

## PARTIES

9.      The Plaintiffs in this action are thirty (30) hospitals that participate in the Medicare program, are reimbursed under the IPPS, and were paid according to the standardized amounts that the Secretary published for FYs 2019 through 2023.  The Plaintiffs are listed below with their Medicare Provider Numbers:

(a)     Acadia General Hospital, INC, d/b/a Ochsner Acadia General Hospital, Medicare Provider No. 19-0044;

(b)     Allina Health System, d/b/a Abbott Northwestern Hospital, Medicare Provider No. 24-0057;

(c)     Allina Health System, d/b/a Buffalo Hospital, Medicare Provider No. 24-0076;

(d)     Allina Health System, d/b/a Cambridge Hospital, Medicare Provider No. 24-0020;

(e)     Allina Health System, d/b/a Faribault Medical Center, Medicare Provider No. 24-0071;

(f)     Allina Health System, d/b/a Mercy Hospital, Medicare Provider No. 24-0115;

(g)     Allina Health System, d/b/a Owatonna Hospital, Medicare Provider No. 24-0069;

(h)     Allina Health System, d/b/a Regina Hospital, Medicare Provider No. 24-0059;

(i)     Allina Health System, d/b/a United Hospital, Medicare Provider No. 24-0038;

(j)     Armstrong County Memorial Hospital, Medicare Provider No. 39-0163;

(k)     BRFHH Monroe, LLC, d/b/a Ochsner LSU Health Monroe, Medicare Provider No. 19-0011;

(l)     East Baton Rouge Medical Center, LLC, d/b/a Ochsner Medical Center-Baton Rouge, Medicare Provider No. 19-0202;

(m)     Florida Health Sciences Center Inc, d/b/a Tampa General Hospital, Medicare Provider No. 10-0128;

(n)     Georgetown Memorial Hospital, d/b/a Tidelands Georgetown Memorial Hospital, Medicare Provider No. 42-0020;

(o)     Hospital Service District No. 1 of the Parish of St. Charles, State of Louisiana, d/b/a St. Charles Parish Hospital, Medicare Provider No. 19-0079;

(p)     Hospital Service District No. 1 Parish of Terrebonne, State of Louisiana, d/b/a Terrebonne General Health System, Medicare Provider No. 19-0008;

(q)     Hospital Service District of the Parish of St. Bernard, State of Louisiana, d/b/a St. Bernard Parish Hospital, Medicare Provider No. 19-0308;

(r)     Lafayette General Medical Center INC, d/b/a Ochsner Lafayette General Medical Center, Medicare Provider No. 19-0002;

(s)     Ochsner Clinic Foundation, d/b/a Ochsner Medical Center, Medicare Provider No. 19-0036;

(t)     Ochsner Medical Center-Hancock LLC, d/b/a Ochsner Medical Center-Hancock, Medicare Provider No. 25-0162;

(u)     Ochsner Medical Center-Kenner LLC, d/b/a Ochsner Medical Center-Kenner, Medicare Provider No. 19-0274;

(v)     Ochsner Medical Center-Northshore, LLC, d/b/a Ochsner Medical Center-Northshore, Medicare Provider No. 19-0204;

(w)     Ochsner Morgan City LLC, d/b/a Ochsner St. Mary, Medicare Provider No. 19-0014;

(x)     Phoebe Putney Memorial Hospital, Inc., Medicare Provider No. 11-0007;

(y)     Phoebe Sumter Medical Center, Inc., Medicare Provider No. 11-0044;

(z)     Southern Regional Medical Corporation, d/b/a Leonard J. Chabert Medical Center, Medicare Provider No. 19-0183;

(aa)    St Francis Regional Medical Center, Medicare Provider No. 24-0104;

(bb)    University Health Shreveport, LLC, d/b/a Ochsner LSU Health Shreveport, Medicare Provider No. 19-0098;

(cc)    University Hospital & Clinics, INC, d/b/a Ochsner University Hospital & Clinics, Medicare Provider No. 19-0006; and

(dd)    Waccamaw Community Hospital, d/b/a Tidelands Waccamaw Community Hospital, Medicare Provider No. 42-0098.

10.     The Defendant, Xavier Becerra, is the Secretary of HHS, which administers the Medicare and Medicaid programs established under titles XVIII and XIX of the Social Security Act.  Defendant Becerra is sued in his official capacity only.  The Centers for Medicare & Medicaid Services ("CMS") is the federal agency to which the Secretary has delegated administrative authority over the Medicare and Medicaid programs.  References to the Secretary herein are meant to refer to him, his subordinate agencies and officials, and to his official predecessors or successors as the context requires.

## LEGAL AND REGULATORY BACKGROUND

### Medicare Part A Payments

11.     The Medicare program provides federally funded health insurance for certain elderly and disabled persons under title XVIII of the Social Security Act.  42 U.S.C. § 1395 *et seq*. This dispute concerns Medicare Part A, which covers inpatient hospital and certain other institutional services.

12.     Prior to October 1, 1983, Medicare compensated most hospitals providing inpatient services based on "reasonable costs."  The Social Security Amendments of 1983 instituted a new prospective payment system for inpatient hospital services, known as the IPPS, effective for cost reporting periods beginning on or after October 1, 1983.  Social Security Amendments of 1983, Pub. L. No. 98-21, § 601, 97 Stat. 65, 149-172 (1983) (codified at 42 U.S.C. § 1395ww(d)).

13.     Under the IPPS, payment is calculated for each inpatient encounter by multiplying a predetermined base payment known as the "standardized amount," which roughly represents the national average cost of a typical inpatient encounter, by a factor (known as a diagnosis-related group or "DRG") reflecting the relative cost of treating patients with a certain diagnosis.

14.     In advance of each FY, the Secretary announces in the Federal Register the standardized amount that will be used to calculate payment in the coming FY.  42 U.S.C. § 1395ww(e)(4)-(5).  The Secretary does not recalculate the standardized amount from scratch each year.  "Instead, following Congress's directive, [the Secretary] calculated the standardized amount for a base year and has since carried that figure forward, updating it annually for inflation."  *Cape Cod Hosp. v. Sebelius*, 630 F.3d 203, 205 (D.C. Cir. 2011).

## Statutory Steps for Calculating the Inaugural Standardized Amount

15.     Congress prescribed specific steps for calculating the standardized amount for FY 1984, which was the first year of the IPPS.  The first step required the Secretary to determine "the allowable operating costs per discharge of inpatient hospital service for [each] hospital for the most recent cost reporting period for which data are available."  42 U.S.C. § 1395ww(d)(2)(A).

16.     Anticipating that the Secretary would have to use data from a prior year to calculate each hospital's "costs per discharge," Congress directed him to update those calculations for inflation to FY 1984.  42 U.S.C. § 1395ww(d)(2)(B).

17.     Next, the Secretary was required to "standardize" those calculations to account for characteristics that might artificially inflate or deflate a hospital's costs per discharge by adjusting for the effects of medical education programs, case mix, and wage costs.  42 U.S.C. § 1395ww(d)(2)(C).

18.     Following standardization, the statute required the Secretary to calculate an average standardized amount for urban hospitals and a separate average standardized amount for rural hospitals.  42 U.S.C. § 1395ww(d)(2)(D).

19.     The urban and rural average standardized amounts were reduced to offset the Secretary's estimate of outlier payments that year.  42 U.S.C. § 1395ww(d)(2)(E).

20.     After reducing for projected outlier payments, the statute required the Secretary to further adjust the average standardized amounts so that aggregate IPPS payments in FY 1984 would be no more or less than what they would have been under the reasonable cost reimbursement system that preceded the IPPS.  *See* 42 U.S.C. § 1395ww(d)(2)(F), (e)(1)(B).  The Secretary's calculation of these budget neutrality adjustments is shielded from review by statute.  *See* 42 U.S.C. § 1395ww(d)(7)(A).

1

### Errors in the Secretary's Inaugural IPPS Standardized Amounts Calculation

21.     The Secretary did not follow the statute when he calculated each hospital's "costs per *discharge*"—the first step in calculating the inaugural standardized amount—because, instead of limiting the denominator of that calculation to discharges as the statute required him to do, he included cases in which patients were not *discharged* from hospital care but were instead *transferred* to another hospital.

22.     The Secretary used Medicare cost report and discharge data from FY 1981 to identify the number of inpatient discharges to include in the "costs per discharge" calculation.  48 Fed. Reg. 39,752, 39,763 (Sept. 1, 1983).  However, neither of those data sources distinguished between true discharges, i.e., where a patient's acute care treatment is complete, and transfers, i.e., where a patient is sent to another department or hospital because the patient requires further treatment beyond the capabilities of the original admitting facility.  49 Fed. Reg. 234, 245 (Jan 3, 1984).

23.     Including transfer cases in the denominator of the "costs per discharge" calculation inflated the number of "discharges" and thereby deflated the "cost per discharge" used in calculating the FY 1984 standardized amount.  The smaller the standardized amount, the lower the IPPS payment.  And since the FY 1984 standardized amount has been carried forward each year since, the Secretary's error continues to unlawfully deflate IPPS payments to this day.

24.     The Secretary acknowledges that discharges are distinct from transfers—at least for purposes of determining IPPS payments.  He defines a discharge as referring to a case in which the patient "[i]s formally released from the hospital," and expressly excluding cases where a patient "is transferred to another hospital paid under the prospective payment system." 48 Fed. Reg. at 39,759. The Secretary adopted a specific payment policy for transfer cases at the time he implemented the

IPPS.  Instead of paying hospitals the full prospective payment rate, which they would otherwise receive if the patient was actually *discharged* from the hospital, hospitals receive a reduced payment for patients who transfer to other IPPS hospitals.  "[T]he transferring hospital, generally providing a limited amount of treatment to the transferred patient, is not entitled to payment at the full prospective rate." 48 Fed. Reg. at 39,759.

25.     The Secretary did not provide a rational explanation for his decision to treat discharges and transfers the same for purposes of calculating the FY 1984 standardized amount while treating them differently for purposes of determining payment.  Rather, he noted that "no data were presented to indicate the actual effect, if any, that this difference between the definitions of discharges under the old and new payment system might have on the DRG rates" and asserted without any support that he "would expect any discrepancy between the 'old' and 'new' definition of discharges to have no significant effect on the rates."  49 Fed. Reg. at 246.

26.     Notwithstanding his assertions in FY 1984 that the impact of overstating discharges in the standardized amount calculation was minimal, the Secretary took care to ensure that he did not repeat his error when he implemented the prospective payment system for capital costs ("Capital PPS") a few years later.  The cornerstone of the Capital PPS is a standardized amount that reflects the *capital* costs per discharge, just as the IPPS standardized amount represents the *operating* costs per discharge.  In calculating the Capital PPS standardized amount, the Secretary "agree[d] with commenters that the treatment of transfers in the discharge count is problematic," and that including transfer cases would dilute the standardize amount.  56 Fed. Reg. 43,358, 43,386 (Aug. 30, 1991).  The Secretary applied a "correction factor" of 0.9911 to remove the effect of transfer cases on the capital PPS standardized amount, which increased the costs per discharge calculation and the resulting Capital PPS standardized amount by 0.9 percent.  *Id*. at 43,368.

27.     Despite having specific knowledge of his error in FY 1984 and later acknowledging in FY 1992 that his calculation methodology was "problematic," the Secretary has yet to adjust the IPPS standard amount to correct for his inclusion of transfer cases in the costs per discharge calculation.

28.     As early as 2002, hospitals began filing appeals with the Board challenging the Secretary's refusal to adjust the present-day standardized amount to correct for the inclusion of transfer cases in the FY 1984 "costs per discharge" calculation.  The Board initially determined that it did not have jurisdiction over those appeals because it interpreted the Secretary's regulations as barring appeals that challenge "predicate facts" (i.e., facts determined in previous and now closed periods, such as the number of discharges in the FY 1984 base year) that were first determined more than three years ago.  Because the inaugural standardized amount was calculated decades ago, the Board dismissed the first wave of these appeals by decision dated April 8, 2015.

29.     The 277 hospitals in that first wave appealed the Board's decision to this Court.  In 2018, the D.C. Circuit reversed the Board, holding that the regulatory three-year limitations period for addressing predicate facts only applies to reopenings initiated by the Secretary and his contractors and not to Board appeals challenging predicate facts.  *Saint Francis Med. Ctr. v. Azar*, 894 F.3d 290, 297 (D.C. Cir. 2018).  The Court remanded those appeals back to the Board to address the merits.

### The Medicare Appeals Process

30.     Section 1878(a) of the Social Security Act entitles a provider of services under the Medicare program to a hearing before the PRRB if three prerequisites are met: (i) the provider is dissatisfied with a final determination of the Secretary as to the amount of the payment under the Medicare Act; (ii) the provider files a request for hearing within 180 days of the final determination

(typically a Notice of Program Reimbursement); and (iii) the amount in controversy is at least $10,000 for an individual appeal or $50,000 for a group appeal.  42 U.S.C. § 1395oo(a); 42 C.F.R. § 405.1835.  If an appeal satisfies these requirements, the PRRB generally has jurisdiction to hear the appeal.

31.     IPPS standardized rate calculations, when published, constitute "final determinations" that may providers can appeal to the PRRB.  42 U.S.C. § 1395oo(a); 42 C.F.R. § 405.1835.

32.     Board decisions regarding substantive or jurisdictional matters, along with any subsequent reversals, affirmances, or modifications by the Secretary regarding those matters, are "final decisions" that providers have a right to challenge by filing a civil action within sixty days following the decision, reversal, affirmance, or modification.  42 U.S.C. § 1395oo(f)(1).

## PROCEDURAL BACKGROUND

33.     In accordance with 42 U.S.C. § 1395oo(a), the Plaintiff hospitals filed the following administrative appeals with the PRRB challenging the Secretary's failure to adjust the standardized amounts that he announced for FYs 2019 through 2023 to correct for the errors he made in calculating the inaugural standardized amount:

> (a)     Allina Health FFY 2019 Understated Standardized Amount CIRP Group (PRRB Case No. 19-1029GC);
>
> (b)     Allina Health FFY 2020 Understated Standardized Amount CIRP Group (PRRB Case No. 20-1139GC);
>
> (c)     Allina Health FFY 2021 Understated Standardized Amount CIRP Group (PRRB Case No. 21-1118GC);

(d)     Allina Health FFY 2022 Understated Standardized Amount CIRP Group (PRRB Case No. 22-0730GC);

(e)     Allina Health FFY 2023 Understated Standardized Amount CIRP Group (PRRB Case No. 23-0887GC);

(f)     Phoebe Putney Hlth Systm FFY 2020 Understated Standardized Amount CIRP Group (PRRB Case No. 20-1153GC);

(g)     King & Spalding FFY 2020 Understated Standardized Amount Group (PRRB Case No. 20-1155G);

(h)     Phoebe Putney Hlth Systm FFY 2021 Understated Standardized Amount CIRP Group (PRRB Case No. 21-1124GC);

(i)     King & Spalding FFY 2021 Understated Standardized Amount Group (PRRB Case No. 21-1125G);

(j)     Phoebe Putney Hlth Systm FFY 2022 Understated Standardized Amount CIRP Group (PRRB Case No. 22-0707GC);

(k)     King & Spalding FFY 2022 Understated Standardized Amount Group (PRRB Case No. 22-0739G);

(l)     Phoebe Putney Hlth Systm FFY 2023 Understated Standardized Amount CIRP Group (PRRB Case No. 23-0890GC);

(m)     King & Spalding FFY 2023 Understated Standardized Amount Group (PRRB Case No. 23-0892G);

(n)     Tidelands Health FFY 2019 Understated Standardized Amount CIRP Group (PRRB Case No. 19-0847GC);

(o)     Tidelands Health FFY 2020 Understated Standardized Amount CIRP Group (PRRB Case No. 20-1151GC);

(p)     Tidelands Health FFY 2021 Understated Standardized Amount CIRP Group (PRRB Case No. 21-1120GC);

(q)     Tidelands Health FFY 2022 Understated Standardized Amount CIRP Group (PRRB Case No. 22-0728GC);

(r)     Tidelands Health FFY 2023 Understated Standardized Amount CIRP Group (PRRB Case No. 23-0891GC);

(s)     Ochsner Health System FFY 2019 Understated Standardized Amount CIRP Group (PRRB Case No. 19-1159GC);

(t)     Ochsner Health System FFY 2020 Understated Standardized Amount CIRP Group (PRRB Case No. 20-1138GC);

(u)     Ochsner Health System FFY 2021 Understated Standardized Amount CIRP Group (PRRB Case No. 21-1117GC);

(v)     Ochsner Health System FFY 2022 Understated Standardized Amount CIRP Group (PRRB Case No. 22-0718GC); and

(w)     Ochsner Health System FFY 2023 Understated Standardized Amount CIRP Group (PRRB Case No. 23-0886GC).

34.     The Board dismissed the Plaintiffs' appeals by decision dated January 31, 2024, holding that the Medicare statute precluded any challenge of the Secretary's calculation of the FY 1984 standardized amount.  Exhibit 1 (Notice of Dismissal).

35.     In its decision, the Board noted that the Secretary was required by statute to adjust the standardized amounts in FYs 1984 and 1985 so that aggregate IPPS payments in those years

would be no more or less than what they would have been under the reimbursement system that preceded the IPPS.  *See* 42 U.S.C. § 1395ww(e)(1)(B).  The Board decided that these "budget neutrality" adjustments were "*inextricably intertwined*" with the calculation of the standardized amount such that challenging the Secretary's calculation of the inaugural standardized amount was tantamount to challenging the budget neutrality adjustments that were applied to that amount. Exhibit 1 at 1.  And, since the budget neutrality adjustments are shielded from review by statute, 42 U.S.C. § 1395ww(d)(7)(A), the Board decided that the statute prohibited the Plaintiffs' challenge of the FY 1984 standardized amount.

## COUNT I
### The Secretary is Acting in Excess of His Statutory Authority

36.     The allegations set forth in the preceding paragraphs are incorporated by reference as if fully set forth herein.

37.     Agencies may not act "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).

38.     The Secretary's decision to adopt the standardized amounts for FYs 2019 through 2023 without correcting for the error he made when he calculated the FY 1984 standardized amount is contrary to the Medicare statute and *ultra vires*.  The statute required the Secretary to calculate the inaugural standardized amount by determining each hospital's "costs per *discharge*." 42 U.S.C. § 1395ww(d)(2)(A)(emphasis added).  The Secretary ignored Congress's express command—and thus acted *ultra vires*—by including transfer cases in the denominator of that calculation.

39.     Indeed, the Secretary's inclusion of transfer cases in the costs per discharge calculation betrays the purpose of the IPPS statute.  Congress intended IPPS payments to be determined by multiplying a figure representing the average costs per discharge (i.e., the standardized amount) by factors reflecting the relative costliness of a given patient.  But because

the Secretary miscalculated the average cost per inpatient encounter, the IPPS payment formula is inherently skewed.

<u>**COUNT II**</u>
<u>**The Secretary's Decision is Contrary to Law**</u>

40.     The allegations set forth in the preceding paragraphs are incorporated by reference as if fully set forth herein.

41.     The Board's decision dismissing the Plaintiffs' jurisdictionally proper appeals is also contrary to law.

42.     A statute precluding review "must be read narrowly" since there is a "strong presumption that Congress intends judicial review of administrative action." *El Paso Natural Gas Co. v. United States*, 632 F.3d 1272, 1276 (D.C. Cir. 2011).

43.     An appropriately narrow reading of section 1395ww(d)(7)(A) does not bar review of the Secretary's calculation of the FY 1984 standardized amount because the text of that provision only precludes review of the FY 1984 and 1985 budget neutrality adjustments.  It does not, by its terms, bar review of the Secretary's calculation of the standardized amount under section 42 U.S.C. § 1395ww(d)(2)(A).

44.     The Board's decision is also contrary to law because it erroneously presumes that if the standardized amount were increased, the Secretary would have the authority to make an offsetting increase to the 1984 and 1985 budget neutrality adjustments.

45.     CMS regulations are clear that predicate facts, like the 1984 and 1985 budget neutrality adjustments, cannot be reopened on the agency's initiative more than three years after they are established.  *See* 42 C.F.R. § 405.1885; *see also Saint Francis Med. Ctr. v. Azar*, 894 F.3d 290, 296 (D.C. Cir. 2018) ("in the context of reopenings, a predicate fact now must be challenged within three years of when it is first determined").  The D.C. Circuit has recognized a limited

exception to this rule when a provider appeals a predicate fact and seeks to have it corrected on a prospective basis. *Saint Francis Med. Ctr.*, 894 F.3d at 296 (stating that the 3 year "limitations period does not apply to PRRB administrative appeals").

46.    As already explained above, the Providers have not appealed the calculation of the 1984 and 1985 budget neutrality adjustments. Instead, the Providers appealed the accuracy of the standardized amount itself. This means that the accuracy of the standardized amount is the *only* issue subject to potential adjustment on a prospective basis.

47.    Finally, the Board's decision is contrary to law because it erroneously presumes the 1984 and 1985 budget neutrality adjustments were appropriately maintained in subsequent FYs while the statute states that budget neutrality adjustments apply only "[f]or discharges occurring in fiscal year 1984 or fiscal year 1985." 42 U.S.C. § 1395ww(e)(1)(B).

## <u>Count III</u>
### <u>The Secretary Failed to Observe Procedure Required by Law</u>

48.    The allegations set forth in the preceding paragraphs are incorporated by reference as if fully set forth herein.

49.    The Secretary's decision not to adjust the standardized amounts for FYs 2019 through 2023 was unlawful because he "has failed to articulate a satisfactory explanation for [his] [in]action." *Athens Cmty. Hosp., Inc. v. Shalala*, 21 F.3d 1176, 1179 (D.C. Cir. 1994) (internal quotation omitted). The Secretary acknowledged at the time he calculated the Capital PPS standardized amount that including transfer cases in the denominator of the costs per discharge calculation was "problematic" and would dilute that calculation. Yet that is exactly what the Secretary did when he calculated the IPPS standardized amount for FY 1984, and he has yet to correct for that error despite repeated opportunities to do so.

<u>COUNT IV</u>
<u>The Secretary's Actions Are Arbitrary and Capricious</u>

50.      The allegations set forth in the preceding paragraphs are incorporated by reference as if fully set forth herein.

51.      The APA deems an agency action unlawful when that agency acts in a manner that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A).

52.      The Secretary's failure to adjust the standardized amounts for FYs 2019 through 2023 to correct for the inclusion of transfer cases in the inaugural standardized amount is arbitrary, capricious and an abuse of his discretion.

53.      The Secretary acted arbitrarily because he offered an explanation for his decision to treat discharges and transfers the same for rate setting purposes that ran counter to the evidence before him.  He failed to rationally explain why he decided to treat discharges and transfers differently for payment purposes but not for rate setting purposes.  The explanation that he proffered—that bundling transfers and discharges would have little effect on rate setting—is belied by his decision to apply a "correction factor" to the inaugural Capital PPS standardized amount to eliminate the effect of the inclusion of transfers in the denominator.  The Secretary also failed to consider relevant data and alternate methodologies in establishing the IPPS standardized amount.

54.      The Board's decision dismissing the Plaintiffs' appeals was also arbitrary and capricious because the Board disregarded black letter law that says provisions precluding review must be interpreted narrowly.

<u>COUNT V</u>
<u>The Secretary's Actions Are Unsupported by Substantial Evidence</u>

55.     The allegations set forth in the preceding paragraphs are incorporated by reference as if fully set forth herein.

56.     Under the APA, a reviewing court shall set aside a final agency decision if, *inter alia*, it is unsupported by substantial evidence in the record.  Whether a decision is supported by substantial evidence turns on whether a reasonable factfinder could have reached the agency's conclusion.  *See Pomona Valley Hosp. Med. Ctr. v. Becerra*, 82 F.4th 1252, 1258-59 (D.C. Cir. 2023).

57.     Jurisdiction can be raised at any time, including *sua sponte* by the court itself. *Wilkins v. United States*, 143 S.Ct. 870, 876 (2023) *(citing Henderson v. Shinseki*, 131 S.Ct. 1197 (2011)).  If the Board's decision is correct, therefore, that would mean that the Board, CMS, the DOJ attorneys that argued *Saint Francis*, and a unanimous D.C. Circuit in *Saint Francis* all missed the fact that the statute clearly compelled a holding that they lacked jurisdiction to hear the hospitals' challenge to the standardized amount.

58.     Stated simply, if the Board (and the courts) do not have jurisdiction to hear a challenge to the standardized amount *now*, then the Board and the court did not have jurisdiction to hear challenges to the standardized amount when it was raised in *Saint Francis*.  894 F.3d at 296. This would mean that over a decade of prior litigation regarding the accuracy of the standardized amount in *Saint Francis* was invalid and unnecessary.  The Board's contention is implausible and unsupported by substantial evidence.

## COUNT VI
## Mandamus

59.     The allegations set forth in the preceding paragraphs are incorporated by reference as if fully set forth herein.

60.     Federal district courts have "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.

61.     The Secretary has the non-discretionary duty to apply properly the substantive and procedural laws relating to Medicare payment, including to fully compensate the Plaintiffs the amounts they are entitled to under the law.  The Secretary violated this non-discretionary duty by failing to correct the standardized amount calculation that governed hospital compensation for FY 2019 through FY 2023.

62.     Thus, the Plaintiffs request an order from this Court that the Secretary recalculate the Hospital's IPPS payments for FY 2019 through FY 2023 after correcting for the Secretary's failure to exclude transfers in the original IPPS standardized amount calculation.

## COUNT VII
## All Writs Act

63.     The allegations set forth in the preceding paragraphs are incorporated by reference as if fully set forth herein.

64.     The Secretary violated the Medicare Act and APA by failing to correct underlying factual errors in the FY 1984 standardized amount calculation, by unlawfully dismissing Plaintiffs' appeals before the PRRB, and by reimbursing the Plaintiffs an amount lower than the statutorily required amount from services provided from FY 2019 through FY 2023.

65.     Under the All-Writs Act, federal district courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).

66.     By law, the Plaintiffs are entitled to an order requiring the Secretary to make proper IPPS payments to the Plaintiffs and to pay appropriate interest on the underpayments. *See* 28 U.S.C. § 1651, 42 U.S.C. §§ 1395oo(f)(2), 1395g(d) and/or 1395l(j), and 42 C.F.R. § 405.378.

### REQUEST FOR RELIEF

67.     The Plaintiffs request the following orders:

(a)     Vacating the Secretary's ruling that the PRRB lacks jurisdiction to review appeals regarding the FY 1984 standardized amount;

(b)     Ordering the Secretary to recalculate the standardized amount without treating transfers as if they were discharges and applying that revised standardized amount in calculating Plaintiffs' IPPS payments for the FYs under appeal;

(c)     In the alternative, issuing a writ of mandamus ordering the Secretary to recalculate the FY 1984 standardized amount calculation and requiring that the Secretary adjust the standardized amounts for FY 2019 through FY 2023 and compensating Plaintiffs for the amount they were undercompensated in the relevant years;

(d)     Requiring the agency to pay legal fees and cost of suit incurred by the Plaintiffs; and

(e)     Providing such other relief as the Court may consider appropriate.

Respectfully submitted,


/s/ Daniel J. Hettich
Daniel J. Hettich, D.C. Bar No. 975262
KING & SPALDING LLP
1700 Pennsylvania Avenue, N.W.
Suite 900
Washington, D.C. 20006
(202) 737-0500 (phone)
(202) 626-3737 (fax)
DHettich@kslaw.com

*Attorney for Plaintiffs*


Date:  April 1, 2024